NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0001n.06

Case No. 22-1209

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| EDGAR MILLER, | ) | **FILED** |
| Plaintiff-Appellant, | ) | Jan 03, 2023 |
|  | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
| UNITED STATES DEPARTMENT OF | ) | THE WESTERN DISTRICT OF |
| AGRICULTURE; RISK MANAGEMENT | ) | MICHIGAN |
| AGENCY; FEDERAL CROP INSURANCE | ) |  |
| CORPORATION, | ) | OPINION |
| Defendants-Appellees. | ) |  |
|  | ) |  |

Before: SUTTON, Chief Judge; SUHRHEINRICH and NALBANDIAN, Circuit Judges.

SUTTON, Chief Judge. For years Edgar Miller purchased crop insurance, hoping to protect his farm from poor harvests. While the insurance for the most part served that purpose, it also brought him three federal lawsuits, an arbitration, and an adverse agency determination from the Federal Crop Insurance Corporation. Today Miller challenges this last decision—the agency's decision—under the Administrative Procedure Act. The district court rejected the challenge. We do too.

I.

"[T]he only possible guarantee of the future is responsible behavior in the present." Wendell Berry, *The Unsettling of America: Culture & Agriculture* 58 (3d ed. 1996). The point has many components, and most farmers appreciate all of them. One of them is the imperative each year to risk the "up-front costs" of sowing in return for the never-guaranteed prospect of

"back-end revenue" from reaping. *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 266 (6th Cir. 2021). The Federal Crop Insurance Act helps farmers to manage these uncertainties through a crop insurance system, which the Federal Crop Insurance Corporation oversees. 7 U.S.C. §§ 1502(a), 1503. Under this federal program, farmers can purchase insurance from the Insurance Corporation or from an approved insurance provider that the Insurance Corporation reinsures. *Id.* §§ 1502(b)(2), 1508(a)(1).

In either case, the Common Crop Insurance Policy, promulgated under the Act, governs. 7 C.F.R. § 457.8. The Crop Insurance Policy requires compliance with the Act, attendant regulations, and the Insurance Corporation's procedures. *Id.* It sets out the particulars of the insurance coverage and the claims process. *See id.* § 457.8(3), (14). Certain provisions address the readjustment and repayment of settled claims. Section 21(b)(3), for instance, allows for repayment of overpaid claims if a farmer "knowingly misreported" yield information. *Id.* § 457.8(21)(b)(3). And § 21(f) contemplates repayment if a farmer fails "to maintain or provide" certain records. *Id.* § 457.8(21)(f), (g).

The Policy also requires the arbitration of disputed claims. *See id.* § 457.8(20)(a)(1). But if a dispute involves policy interpretation, rather than mere application, the parties must turn to the Insurance Corporation for a final agency determination interpreting the Policy. *Id.* Parties must submit a request that "[i]dentif[ies] and quote[s] the specific provision" at issue. *Id.* § 400.767(a)(3). From there, the Insurance Corporation issues a generally applicable interpretation that binds all program participants. *Id.* §§ 400.766(b)(2), 400.768(e). Because these decisions must be generally applicable, any requests for interpretation must not turn on or even invoke "specific facts" or "alleged conduct." *Id.* § 400.767(a)(8).

Edgar Miller, a corn and soybean farmer, has experienced this "large regulatory regime" firsthand. *Helena Agri-Enters.*, 988 F.3d at 267. He purchased crop insurance from an approved insurance provider, Farmers Mutual Hail Insurance Company of Iowa. After poor harvests in 2012, 2013, and 2014, Miller filed claims. He received payouts for 2012 and 2013. But Farmers Mutual declined his claim for 2014. Making matters worse for Miller, Farmers Mutual realized it had overpaid Miller for 2012 and 2013 due to his poor recordkeeping. It demanded repayment. When Miller refused, the parties went to arbitration.

Farmers Mutual secured a favorable arbitral award and filed a petition to confirm it. But the district court nullified the award after finding that the arbitrator had stepped out of line and interpreted the Policy in deciding that Farmers Mutual could readjust past claims and require repayment from Miller. *Farmers Mut. Hail Ins. Co. of Iowa v. Miller*, 366 F. Supp. 3d 974, 978 (W.D. Mich. 2018); *see* 7 C.F.R. § 457.8(20)(a)(1).

The parties returned to the Insurance Corporation. It issued "Final Agency Determination 287," a title that brings with it the virtue of making everyday speech sound like poetry. The ruling explained that multiple policy provisions require farmers to repay overpaid claims, and that insurers have a duty to correct errors in claims. *Final Agency Determination* FAD-287 (Oct. 16, 2019), https://tinyurl.com/hyb4rzep. With Final Agency Determination 287 in its hand, if not its ear, Farmers Mutual filed another petition to confirm the arbitral award. This time, the district court granted it, and we affirmed. *Farmers Mut. Hail Ins. Co. of Iowa v. Miller*, No. 20-1978, 2021 WL 3044275, at *1, *4 (6th Cir. July 20, 2021).

Having reached the end of the road on the arbitral award proceedings, Miller challenged one premise of that ruling—Final Agency Determination 287—under the Administrative Procedure Act. The district court rejected the challenge. This appeal followed.

3

II.

All that's before us today is whether Final Agency Determination 287 complies with the Administrative Procedure Act. Only if the ruling is arbitrary and capricious may we set it aside under the Act. 5 U.S.C. § 706(2)(A). This "standard requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021).

Determination 287, for short, meets this modest standard. What did the parties ask the agency to decide? Farmers Mutual wanted to know if § 21(b)(3) of the Crop Insurance Policy—which requires repayment if a farmer "knowingly misreported any information related to any yield"—sets out "the only circumstances" for recovering overpaid claims. R.12 at 2, 6. Miller, in turn, asked whether an insurer could readjust claims outside of either § 21(b)(3) or "a failure to provide and to retain records" under § 21(f). *Id.* at 53. The Insurance Corporation answered "no" to the former question and "yes" to the latter. *Final Agency Determination* FAD-287, *supra*. It added that insurers must "audit and correct any claim that was not adjusted according to [the Insurance Corporation's] loss adjustment procedures." *Id.* Put differently, the Insurance Corporation found that (1) multiple policy provisions require farmers to repay overpaid claims and (2) insurers have a duty to correct such errors.

The text of the Crop Insurance Policy and the regulatory framework support both conclusions.

Begin with the Policy's text. It obligates a farmer to "repay any overpaid amounts," *e.g.*, 7 C.F.R. § 457.8(21)(g), in a variety of circumstances. Included among them are: "misreport[ing] any material information," *id.* § 457.8(3)(g)(4); having an incorrect approved yield, *id.*; failing to provide "verifiable records to support [a] yield in the database," *id.* § 457.8(3)(h)(1); failing to set out a "valid" agronomic basis for an approved yield, *id.*; changing "production method[s]," *id.*

4

§ 457.8(3)(h)(3); "incorrectly report[ing] any information on the acreage report," *id.* § 457.8(6)(h); having a harvested production that "exceeds the appraised production," *id.* § 457.8(15)(b)(2); "knowingly misreport[ing]" yield information, *id.* § 457.8(21)(b)(3); failing to "maintain" records, *id.* § 457.8(21)(f); and failing to "provide records," *id.*

The Policy's text also requires the correction of errors. The Crop Insurance Policy tells insurers to comply with the Insurance Corporation's loss adjustment procedures, *id.* § 457.8(14)(i), and obligates farmers to retain and provide records upon the insurer's "request," *id.* § 457.8(21)(b). These obligations bolster Determination 287's finding of a duty to audit and correct claims.

The crop insurance system's broader regulatory framework supports these conclusions as well. The Crop Insurance Policy requires insurers to comply with the Insurance Corporation's procedures, including its "handbooks, manuals, memoranda[,] and bulletins." *Id.* § 457.8. And the regulatory scheme binds all program participants. *See Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85 (1947).

The Insurance Corporation's procedures convey a similar set of obligations to the Policy. The Loss Adjustment Manual outlines extensive processes that insurers must follow in adjusting claims, including corrected claims. *Loss Adjustment Manual Standards Handbook: 2018 and Succeeding Crop Years* 313 (Jan. 2018), https://tinyurl.com/yktejunc. The bulletins and informational memoranda subject insurers to periodic compliance reviews, *Informational Memorandum* COM-17-004 (Aug. 7, 2017), https://tinyurl.com/5yarzkms, and direct insurers to "reevaluate[]" claims after changes in guidance occur, *Managers Bulletin* MGR-19-029 (Dec. 23, 2019), https://tinyurl.com/269a62nh.

Some of the Insurance Corporation's other decisions confirm the point. Recall that these determinations apply generally and bind all program participants. 7 C.F.R. § 400.766(b)(2). Past

determinations have set out a duty for insurers to correct claims. *See, e.g.*, *Final Agency Determination* FAD-136 (Apr. 20, 2011), https://tinyurl.com/3ra4e2ua (requiring insurer "to correct claims when information is found to be incorrect in accordance with FCIC approved policy provisions and procedures"); *Final Agency Determination* FAD-140 (May 10, 2011), https://tinyurl.com/2p8yncjx (noting "any time there is not conformance with the approved policy and procedures, [insurers] must take such actions as are necessary to achieve conformance"). Far from announcing a novel obligation, Determination 287 echoed these prior determinations.

All perspectives considered, the Crop Insurance Policy and the regulatory framework support the two core holdings in Determination 287, making it anything but arbitrary and capricious.

Attempting to avoid this conclusion, Miller points out that the Insurance Corporation failed to list all of the policy provisions that require repayment in Determination 287. But the regulations put the burden on the requesting parties to "[i]dentify and quote" the policy provision that they ask to be interpreted. 7 C.F.R. § 400.767(a)(3). For its part, Farmers Mutual requested an interpretation of § 21. But Miller requested "a determination based on the Basic Provisions, in general." R.12 at 52. Having failed to comply with the regulations on the front end, he cannot complain about the agency's determination on the back end.

Miller objects that Determination 287 includes analysis that is irrelevant to his case. But that should not come as a surprise. Recall that final agency determinations apply generally, bind all participants, and are not permitted to consider specific facts or conduct. 7 C.F.R. §§ 400.766(b)(2), 400.767(a)(8).

Miller claims that Determination 287's reliance on two prior agency determinations—Final Agency Determinations 106 and 281—cannot be squared with the text of the Crop Insurance Policy. But Miller failed to challenge these decisions in the right way. A farmer must ask the agency to decide if a determination is "subject to administrative review" before he may seek judicial review of it. *Id.* § 457.8(20)(k); *see also id.* § 11.6. Miller followed this process for Determination 287. But he never did the same for Determinations 106 and 281, as required. *Id.* § 457.8(20)(k). That's one problem.

Another problem is that, whatever the merits of Miller's concerns about Determinations 106 and 281, Determination 287 stands on its own. The decision is well explained, reasonable, and far from arbitrary and capricious.

The third problem is that his objections to these earlier Determinations are unconvincing anyway. Miller objects to one sentence in Determination 106: "When overpayments are discovered as a result of non-compliance with any policy provision, the policyholder may be required to repay such overpaid amounts." *Final Agency Determination* FAD-106 (Jan. 21, 2010), https://tinyurl.com/p534yhwd. This sentence, as he sees it, renders superfluous the phrase "repay any overpaid amounts" found in § 21(g) and other provisions. Appellant's Br. 23–24. But the supporting examples listed in Determination 106—"incorrect yields, uninsurable acres reported on the acreage report, overstated acreage, incorrect share," *Final Agency Determination* FAD-106, *supra*—all correspond to policy provisions that explicitly require repayment. *See* 7 C.F.R. § 457.8(3)(g)(4), (6)(h), (21)(b)(3). The broader regulatory system, as shown, supports this error correction and repayment obligation.

As for Determination 281, Miller objects to its conclusion that insurers and the Insurance Corporation have a "duty to correct claims" in order to protect taxpayer dollars. *Final Agency Determination* FAD-281 (Sept. 20, 2018), https://tinyurl.com/k53bcvac. This sentence, as he sees it, lacks any basis in the Crop Insurance Policy. But the policy does not operate in a vacuum. The Act requires the crop insurance system to be "sound," 7 U.S.C. § 1502(a), and requires insurers "to address program compliance and integrity issues as such issues develop," *id.* § 1515(a)(2). The regulations create administrative remedies to ensure "compliance and prevent fraud, waste, and abuse" in the program. 7 C.F.R. § 400.451(a); *see id.* § 400.451(e) (requiring "protection of the public interest"). These provisions support the duty to protect the public fisc outlined in Determination 281.

Miller also faults the Insurance Corporation for citing *Old Republic Insurance Co. v. Federal Crop Insurance Corp.*, 947 F.2d 269 (7th Cir. 1991). That case, it is true, considered repayments from an insurer to the Insurance Corporation, not from a farmer to an insurer. But the Seventh Circuit held that the Insurance Corporation could collect overpayments from insurers based in part on a provision in the reinsurance agreement allowing for the review and auditing of records for paid claims. *Id.* at 274–75. The Crop Insurance Policy contains a similar provision for reviewing records, as between farmers and insurers. 7 C.F.R. § 457.8(21)(b). Although the facts differ in this case and that one, the Insurance Corporation could reasonably invoke the reasoning of *Old Republic* to support the point that insurers must correct errors in claims.

What of the district court's statement in its *prior order* nullifying the arbitral award that a paid claim "remains settled" unless § 21(b)(3) applies? *Miller*, 366 F. Supp. 3d at 979. That is neither here nor there. It is not pertinent here because time and plenty of later proceedings have long overtaken it. And it was not right there because it could not be reconciled with the multiple

other policy provisions requiring repayment, *see* 7 C.F.R. § 457.8(3)(g)(4), (3)(h), (6)(h), (15)(b)(2), (21)(f); was inconsistent with § 21(b) and its carve-out of the right of the insurer to request and inspect records, *id.* § 457.8(21)(b); and does not fit with the process for correcting claims in the Loss Adjustment Manual, *see Loss Adjustment Manual*, *supra*, at 313.

We affirm.